PEARSON, MJ

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JAMES E. MAROK, | ) | CASE NO.   5:08CV1832 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE PEARSON |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant(s). | ) | **ORDER** |

### Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security Administration ("Agency") denying the application of Plaintiff James E. Marok for a period of disability, Disability Insurance Benefits, and Supplemental Security Income (collectively "benefits").   The parties have consented to the jurisdiction of the undersigned Magistrate Judge.

Because the decision denying benefits to Marok is not based upon proper legal standards and not supported by substantial evidence, the Court reverses and remands the Agency's final decision pursuant to Sentence Four of 42 U.S.C. § 405(g) for further administrative proceedings in a manner consistent with this opinion.

(5:08CV1832)

## I.  Overview

Marok complains of chronic back pain, degenerative disc disease in his back, fibromyalgia, blood clots in his legs, depression, and a past history of Pulmonary Embolism.  (Tr. 10, 18-21.)  Marok based his application for benefits largely on the alleged disabling conditions of lower back problems in the lumbar region, blood clots in the legs, and obesity with an onset date of February 19, 2005.  (Tr. 17, 63, 178, 182.)  The chief dispute arises over whether there is substantial evidence to find that Marok's condition met or equaled a listed impairment.

Marok was 36 years old at the time of the administrative hearing.  At 5'10 and ½  inches and approximately 385 pounds, Marok is a morbidly obese man who is able to read, write, and understand English.  (Tr. 16-17.)  He completed the 12th grade and one year of college and has attended some classes at community colleges.  (Tr. 16.)  From 1990 to February 19, 2005, Marok's previous employment included work as a warehouse and route driver for supply companies.  (Tr. 171.)  There is no dispute that his physical impairments limit his ability to perform his past relevant work.  (Tr. 68.)

The ALJ found that Marok had not engaged in substantial gainful activity since February 19, 2005.  (Tr. 65.)  The Administrative Law Judge ("ALJ") determined that Marok suffers from the following severe impairments: morbid obesity, low back pain, minimal lumbar disc bulging at L1-3, and obstructive sleep apnea.  (Tr. 65.)  The ALJ also determined, however, that Marok "does not suffer from an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1,  Regulation No. 4 (20 CFR §§ 404.1520(d) and 416.920(d))."  (Tr. 68.)   The ALJ found that Marok did not have

2

(5:08CV1832)

the residual functional capacity ( or "RFC") to perform his past relevant work and concluded that Marok could perform sedentary work as a telephone clerk, food-beverage-order clerk, and bench assembler and, therefore, Marok was not disabled.  (Tr. 68-69.)

After reviewing the entire administrative record and the applicable legal standards, the Court finds that the ALJ's decision, as written, is not supported by substantial evidence and based upon proper legal standards.  Therefore, the matter should be remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) to permit the Agency to fully articulate the reasons for its denial of benefits.

## II.  Procedural History

On February 8, 2006, Marok applied for benefits alleging disability since February 19, 2005 because of (lower) back problems in the lumbar region, blood clots in the legs, and obesity. (Tr. 17, 63, 178, 182.)  On August 9, 2006, the Agency initially denied Marok's application and on January 19, 2007 denied it again upon reconsideration.  (Tr. 73, 76.)  Subsequently, Marok requested a hearing before an ALJ.  (Tr. 10, 103-105.)  On July 6, 2007, Marok appeared for the hearing (*via* video) without counsel.[1]  (Tr. 63.)  The ALJ's August 23, 2007 written decision upheld the earlier denial of benefits for Marok.  (Tr. 71.)  Following the ALJ's denial, Marok appealed to the Appeals Council and submitted additional medical evidence regarding his physical impairments.  (Tr. 502.)  On July 17, 2008, the Appeals Council denied Marok's request

---

[1]  At various times throughout his attempts to gain benefits, Marok has been represented by two different attorneys.  His first attorney was  John R. Enderle who resigned before Marok's appeal and explained that, in his opinion, the medical records did not indicate that Marok's problems were "severe enough to render [him] disabled. . . ." (Tr. 14, 83, 102.)  Attorney Dianne Newman represents Marok before the Court.  (Tr. 503-504.)

3

(5:08CV1832)

for review, which prompted Marok to timely file the instant appeal asserting the following

assignments of error:

> (1.) The ALJ did not have substantial evidence to find that Marok did not meet or equal a listed impairment.

> (2.) The ALJ did not have substantial evidence to find that there were jobs in the national economy that Marok could do.  He did not meet his burden at Step Five of the Sequential Evaluation.

ECF No. 14 at 9.

### III.  Standard of Review

#### A.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision to deny disability benefits is limited to determining

whether there is substantial evidence to support the denial decision and whether the ALJ properly

applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681

(6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence

is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health

& Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Under 42 U.S.C. § 405(g), the findings of the

ALJ are conclusive if they are supported by substantial evidence.

In determining the existence of substantial evidence, the reviewing court must examine

the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524,

535-36 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001).  The

ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing

court would have decided the matter differently, and even if substantial evidence also supports a

4

(5:08CV1832)

different conclusion.  See *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999);

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  The substantial evidence standard

presupposes that there is a "zone of choice" within which the Agency may proceed without

interference from the courts.  *Mullen*, 800 F.2d at 545.  The district court may look into any

evidence in the record, regardless of whether it has been cited by the ALJ.  *Id.*  The reviewing

court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide

questions of credibility.  See *Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387

(6th Cir. 1984).  The Court must review the findings of the ALJ consistent with the above

deferential standards.

###    B.   Evaluating Disability Claims: The Sequential Evaluation

The statutory meaning of  "disability" is the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R.§ 416.905(a); 20

C.F.R. § 404.1505(a).  The Commissioner promulgated regulations that prescribe a five-step

sequential evaluation process  to determine whether an individual qualifies for benefits.  *See* 20

C.F.R. § 404.1520; *see also* 20 C.F.R. § 416.920.  At Step One, the ALJ determines whether the

individual is currently engaged in substantial gainful activity.  At Step Two, if the individual is

not currently engaged in substantial gainful activity, the ALJ considers the medical severity of

the individual's impairments or combination of impairments pursuant to the requirements in 20

C.F.R. § 404.1509.  At Step Three, if the individual has a severe impairment, the ALJ determines

(5:08CV1832)

whether the individual has an impairment that meets or equals one of the criteria in the Listing of

Impairments and the duration requirement.[2]  If so, disability is presumed.  Before considering the

fourth step, the ALJ must determine the individual's RFC, *i.e.* the claimant's ability to perform

physical and mental work on a sustained basis despite limitations from impairments.  At Step

Four, the ALJ determines whether the individual's RFC permits the performance of past relevant

work.  If the individual is unable to perform past relevant work, the burden shifts to the

Commissioner to show that there is work in the national economy that the individual can

perform.  To make this determination, at Step Five, the ALJ considers the individual's RFC, age,

education, and work experience.  If the individual is unable to work, then the individual is

disabled.  *See* 20 C.F.R. § 404.1520(a)(4).

---

[2] *See e.g.*, 20 C.F.R. Part 404, Subpart P, Appendix1.

6

(5:08CV1832)

## IV.  Law and Analysis

### A.  The ALJ's Written Decision Inadequately Articulated Whether Marok's Impairments Meet or Medically Equal a Listing

#### 1.  Effects of Obesity on Marok's Musculoskeletal System or Any Other System

Marok asserts that the ALJ has committed  reversible error because the ALJ's written decision does not adequately articulate the ALJ's determination as to why Marok does not meet or equal a listed impairment.  ECF No. 14 at 10.  Specifically, Marok contends that the ALJ failed to consider the effects of obesity on his musculoskeletal, respiratory, and cardiovascular body systems as SSR 02-1p mandates because the ALJ did not "ask such questions" or "comment in his decision[.]"  *Id*.

Sixth Circuit case law does not require a heightened articulation standard at Step Three of the sequential evaluation process.  *See Bledsoe v. Barnhart,* No. 04-4531, 2006 WL 229795, at *411 (6th Cir. Jan. 31, 2006)* (*citing Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)*).  In order to conduct a meaningful review, the Court does, however, require that the written decision makes sufficiently clear the reasons for the ALJ's decision.  *Cf. Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544-46 (6th Cir. 2004)* (*remanding* the case because the ALJ failed to make sufficiently clear why he did not give proper weight to the treating physician's opinion); *see also Hurst v. Sec'y of Health & Human Servs.,* 753 F.2d 517, 519 (6th Cir. 1985)* (*finding* that it is absolutely essential for meaningful appellate review for an ALJ to articulate reasons for crediting or rejecting evidence).

7

(5:08CV1832)

Listing 1.00Q states that obesity is often associated with a disturbance of the musculoskeletal system, and this disturbance can be a major cause of disability in obese individuals.  *See* 20 C.F.R. Pt. 404, Subpt. P., App.1.  Musculoskeletal impairments, in obese individuals, can be greater than the effects of each impairment considered separately.  *Id*.  The Regulations require the Agency to consider the combined affects of an individual's impairments because even when considered separately, the impairments may be of sufficient severity.  20 C.F.R. § 404.1523.  Although the Agency deleted the obesity listing, new language in the Listings states that adjudicators must consider any *additional and cumulative* effects of obesity when determining whether an obese individual meets or equals a Listing.[3]  20 C.F.R. Pt. 404, Subpt. P., App.1 (emphasis added); *see also* SSR 02-1p, 2000 WL 628049, at *1 (*reminding* adjudicators to consider obesity when evaluating a disability).

Courts have repeatedly remanded cases when an ALJ fails to articulate a meaningful discussion of the Listings or related criteria.  For instance, in *Johnson v. Comm'r of Soc. Sec., No. 07-14289, 2008 WL 5411658, at *4 (E.D. Mich. Dec. 23, 2008)*, the ALJ, without citing a Listing or specifically referencing criteria in a Listing, determined that the plaintiff's severe impairments or combination of impairments did not meet or equal a Listing.  Because the district court was unable to discern the legal standards and decipher which Listing the ALJ applied to

---

[3]  Effective October 25, 1999, the Commissioner's Regulations deleted Listing 9.09 from the listings of impairments. *See* Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 Fed. Reg. 46122 (Aug. 24, 1999)(to be codified at 20 C.F.R. Pt. 404); *see also* *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 643-44 (6th Cir. 2006).

8

(5:08CV1832)

reach his non-disability decision, the district court remanded the case for further administrative proceedings. *Id*. Similarly, in *Motley v. Comm'r of Soc. Sec.*, No. 1:08-CV-00418, 2009 WL 959876, at *12-13 (S.D.Ohio Apr. 8, 2009), the record suggested that the plaintiff may meet or equal a Listing. The ALJ, however, determined that the plaintiff was not disabled, but failed to articulate specific reasons for his conclusion. *Id*. The court remanded the case for further administrative proceedings because it was unable to perform a meaningful review. *Id*.; *see also Herald v. Astrue*, No. 07-165, 2008 WL 2705452, at *5-6 (E.D. Ky. July 9, 2008) (*remanding* the case for further administrative proceedings, in part, because the ALJ failed to perform an individualized assessment of the impact of obesity on the plaintiff as SSR 02-1p requires).

      In the instant matter, because the ALJ's Listings' analysis in the decision is not clearly articulated. Based upon that written, it is not possible to ascertain whether the ALJ considered criteria such as the disabling effects of obesity on Marok's overall condition. The ALJ's written decision does not articulate any individualized assessment the ALJ may have mentally constructed. Rather than describe the reasons for his Step Three determination, the ALJ summarily states that a medical expert testified that Marok met no Listing and that he (the ALJ) concurred with the medical expert even though the medical expert's finding of residual functional capacity was "less restrictive" than the ALJ's. (Tr. 68.) To decipher what the medical expert said, the reader must travel back to the transcript – something not immediately accessible to the typical reader, including Marok – of the administrative hearing which reflects that the ALJ asked Medical Expert, Dr. Ashok Jilhewak, the following question:

(5:08CV1832)

> Q: "Now, doctor, do any of the conditions meet or equal a listing?"
>
> The Medical Expert responds:
>
> A: "Not in my opinion, Your Honor. There is no listing for morbid obesity. There is no neurological deficit for the chronic low back pain."

(Tr. 36.)

Despite the Medical Expert's fairly specific answer, the ALJ's written decision merely states that, "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR §§ 404.1520(d) and 416.920(d))."  (Tr. 68.)  Although the ALJ determined that Marok was "generally credible" and that he "limited [the plaintiff] to sedentary work due to degenerative disc changes and obesity (SSR 02-1p)," the ALJ still failed to mention a specific listing during the hearing or in his written decision.  (Tr. 68.)

In contrast to the ALJ's decision in *Bledsoe* where the challenged articulation was found to be specific enough, in this case the ALJ's written decision states that he considered "all symptoms" and "opinion evidence" in accordance with the applicable requirements, but he does not describe that evidence or his findings relative to it, making the ALJ's written decision ambiguous or otherwise incomplete in an important respect.  (Tr. 68.)  The ambiguity is most striking in the ALJ's cloudy analysis regarding the effects of obesity on Marok's musculoskeletal system and other systems.  As the *Bledsoe* Court made clear, there is no particular procedural mode of analysis for obese disability claimants, it is however, important that the Court and subsequent reviewers be able to ascertain whether the ALJ  considered the additional and cumulative effects of obesity at Step Three of the sequential evaluation process.  That is not

10

(5:08CV1832)

possible in the instant case.

Without doubt, the ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Moreover, it is well established that the substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d at 545.  Notwithstanding these maxims, all claimants, including Marok, deserve a decision wherein the ALJ's analysis is properly articulated.  *See Cotter v. Harris*, 642 F.2d 700, 707 (3rd Cir. 1981) (*finding* that an ALJ's "bare recital of boilerplate language" and careful consideration of all the testimony and exhibits was insufficient).   Accordingly, a Sentence Four remand is appropriate to permit the Agency to clearly articulate justification for its conclusion.

## 2.  **The ALJ Properly Developed the Record**

Plaintiff asserts that in the absence of counsel the ALJ failed to adequately assist him at the hearing.   ECF No. 14 at 9.  Specifically, plaintiff claims that the ALJ failed to ask the Medical Expert questions regarding the effects of obesity on his musculoskeletal system or any other system as required by SSR 02-1p.  *Id*.  The Court disagrees.

The ALJ has a special duty to fully develop the record in the absence of counsel at an administrative hearing.  *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th

11

(5:08CV1832)

Cir. 1983).  A claimant may waive his statutory right to counsel.  20 C.F.R. § 404.971.  The

ALJ, however, must not assume the role of counsel, but act as an examiner charged with

developing the facts.  *Lashley*, 708 F.2d at 1051 (*quoting Richardson v. Perales*, 402 U.S. 389,

411(1971)).  While a reviewing court may carefully scrutinize the record for an unrepresented

claimant, a reversal or remand is not required merely because the record is not as developed as it

could be if counsel had represented the claimant.  *See  Holden v. Califano*, 641 F.2d 405, 408

(6th Cir.1981).  Rather, a court must examine each case to determine whether the ALJ "fully and

fairly developed the record through a conscientious probing of all relevant facts."  *Rowden v.

Chater*, No. 95-5630, 1996 WL 294464, at *1 (6th Cir. June 3, 1996).

The Court recognizes that the ALJ's written decision is ambiguous regarding the effects

of obesity on Marok's musculoskeletal system and other systems.  The Court, however, does not

find that the ALJ failed to adequately assist Marok.  Although Marok knowingly waived his right

to representation, as the defendant aptly noted, Marok understood the proceeding and adequately

presented his case to the ALJ.[4]  ECF No.17 at 11.  The record indicates that the ALJ asked a

series of questions regarding Marok's subjective complaints, including but not limited to

questions concerning his vision, hearing, sense of smell, breathing, speech, attention and

concentration, and allergies.  (Tr. 20-21.)  While the record reflects that the ALJ did not ask a

specific question regarding the effects of obesity on Marok's musculoskeletal system or any other

---

[4]  Although the actual "Wavier of Right to Representation" with Marok's signature is
absent from the record, the July 6, 2007 hearing transcript illustrates that Marok signed this
document and knowingly proceeded without counsel.  (Tr. 1, 14.)

12

(5:08CV1832)

body system, it also reflects that the ALJ specifically asked Marok, at least two times, if he had

any questions for the Medical Expert.  (Tr. 39-40.)  Plaintiff directed both the ALJ and the

Medical Expert's attention to certain medical records, but did not ask the Medical Expert any

questions.  (Tr. 40.)  Additionally, Marok, who had completed high school and attempted two

years of college, conducted a direct examination of his witness, Jennifer Dilgard.[5]  (Tr. 49-51.)

The Court notes the difficulties that unrepresented claimants face in the administrative

system, but under these circumstances, the Court concludes that Marok's claim that the ALJ

failed to adequately assist him at the hearing is without merit.

### 3.  Sentence Six Remand is Not Warranted for Plaintiff's Additional  Medical Evidence

Marok asserts that the additional medical evidence submitted to the Appeals Council, but

not reviewed by the ALJ, accurately reflects his pain and the additional medical treatments he

underwent to relieve his pain.  ECF No. 14 at 14.  He requests a remand pursuant to Sentence Six

of 42 U.S.C. § 405(g), for consideration of this additional evidence.

Generally, if the Appeals Council denied a claimant's request for review, district courts

may not reverse an ALJ's decision solely because a claimant submitted additional evidence to the

Appeals Council.  *See* *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).  District courts,

however, can remand a case, pursuant to Sentence Six of 42 U.S.C. § 405(g), for consideration of

such evidence only when there is a showing that the new evidence is material and there is good

---

[5]  Jennifer Dilgard is Marok's girlfriend who testified on his behalf.  (Tr. 15, 49-51.)

(5:08CV1832)

cause for the failure to include it in the prior proceeding.  *See* 42 U.S.C. § 405(g); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Evidence is considered new if it was "not in existence or available to the claimant at the time of the administrative hearing." *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990).  To be considered material, there must be a reasonable probability that the ALJ would have reached a different decision if the evidence had been presented.  *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711-12 (6th Cir. 1988).

In addition, the new evidence must relate to the claimant's alleged condition at the time of the administrative proceedings in order to be considered relevant.  *See Sizemore*, 865 F.2d at 712.  Finally, there must be a demonstration of good cause for failing to obtain the evidence prior to the hearing before the ALJ.  *See Cotton*, 2 F.3d at 695.  In the Sixth Circuit, evidence or a report simply dated after the ALJ's decision does not satisfy the good cause requirement.  The claimant must also provide a valid reason for his or her failure to obtain that evidence before the hearing date.  *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). Moreover, the party seeking remand has the burden of demonstrating that remand is appropriate. *See  Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).

To obtain a Sentence Six remand, the plaintiff must show both materiality and good cause.  42 U.S.C. § 405(g).  Marok falls short with respect to both of these requirements. During the July 6, 2007 hearing and before the ALJ issued his August 23, 2007 written decision,

(5:08CV1832)

Marok had several opportunities to notify the ALJ that his medical records were incomplete –
specifically that his medical records from Dr. Blake were not a part of the record.[6]

On October 9, 2007, Marok submitted to the Appeals Council additional medical
evidence from his pain specialist, Dr. Susan Blake.  (Tr. 502-19.)  In a faxed letter to the Appeals
Council, Marok asserted that "the records were not complete at the time of the hearing and the
ALJ never offered to get those records or to direct the Claimant to get the records."  (Tr. 504.)
The additional medical evidence consisted of medical treatments from February 19, 2007 to July
9, 2007.  (Tr. 502-19.)   On July 17, 2008, the Appeals Council denied Marok's request for
review.  (Tr. 2-5.)

The record indicates that during the hearing the ALJ admitted and received into evidence
Marok's medical records marked "1F through and including 30F" without objection from Marok.
(Tr. 15.)  At that time, Marok did not advise the ALJ that his medical records from Dr. Blake had
not been proffered, admitted or received into evidence.  While the ALJ questioned Marok on his
most recent doctor's appointments, Marok did not notify the ALJ of his upcoming July 9, 2007
appointment with Dr. Blake.  (Tr. 18.)  Rather, Marok only notified the ALJ of his June 28, 2007
appointment with his "back pain doctor."  (Tr. 18.)  Again, Marok failed to mention that Dr.
Blake was administering additional medical treatments for his back pain.  (Tr. 18.)

Another relevant consideration is that at the conclusion of the hearing, the ALJ informed
Marok that if he had "something that [he] wish[ed] to submit afterwards, [he] may do so. . . ."

---

[6]  Exhibit No. 31F consists of Marok's medical records from Dr. Blake.

15

(5:08CV1832)

(Tr. 51.)  Instead, on October 9, 2007, Marok submitted Dr. Blake's medical report to the

Appeals Council.  (Tr. 502-19.)  Dr. Blake's medical report is dated July 25, 2007, almost a

month before the ALJ issued his August 23, 2007 written decision.  (Tr. 505.)  Dr. Blake's

medical report consists of additional medical treatments administered to Marok in which all but

the July 9, 2007 medical treatment occurred before the July 6, 2007 hearing.  (Tr. 506-19.)

Although Marok asserts that this medical evidence is indicative of additional pain and

medical treatments, he does not provide the Court with a sufficient reason as to why this medical

evidence is material.   More importantly, Marok has not provided the Court with good cause as to

why he failed to incorporate this medical evidence into the record before the ALJ issued his

written decision.   The Court takes judicial notice of Marok's then unrepresented status and the

possible difficulty he may have faced in obtaining medical records.  *See Spencer v. Astrue,*

*No.1:08CV71-J, 2008 WL 5214169, at *1 (W.D.Ky. Dec. 12, 2008)* (*declining* to enter a

Sentence Six remand, but recognized the difficulties in obtaining medical records in a timely

manner).  But in light of Marok's education and intelligence, Marok should have exercised

greater diligence and submitted the medical records before the ALJ issued his written decision.

*See Allison v. Sec'y of Health & Human Servs.,* No. 84-5281, 1985 WL 13097, at *5 (6th Cir.

Mar. 21, 1985).  Accordingly, a Sentence Six remand is not appropriate.

### B.  Harmless Error Analysis

The Sixth Circuit has found that the harmless-error rule applies in the Social Security

context.  *Masters v. Astrue,* No. 07-123-JBC, 2008 WL 4082965, at *3 (E.D. Ky. Aug. 29, 2008),

16

(5:08CV1832)

(*citing Heston*, 245 F.3d at 535) (failure to explain weight given to treating physician is not reversible error where ALJ's opinion is nonetheless supported by substantial evidence and error was harmless); *cf. Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 541 ("a procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.").  Nonetheless, courts apply a harmless error analysis cautiously, taking care to avoid rewriting an ALJ's decision *post hoc* even when substantial evidence exists to support the ALJ's decision.

The governing regulations requires an ALJ to prepare a "written decision that explains in clear and understandable language the specific reason for the decision." 20 C.F.R. § 405.371(a). "The decision must be based on evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 416.1453(a).  While a "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case," inaccuracies, incomplete analysis, and unresolved conflicts of evidence can serve as a basis for remand. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000).

In the instant matter, the ALJ's error – failure to articulate justification for his conclusion – was not harmless.  Rather, it was crucial.   The ALJ determined at Step Two that Marok suffers from the severe impairment of morbid obesity.  (Tr. 65.)  The frequent references to Marok's obesity in the record should have alerted the ALJ that he should consider Marok's obesity and its effects on his musculoskeletal system and other systems.  (Tr. 23, 221, 302, 429.) Although the ALJ may have considered Marok's obesity in making his mental determinations,

17

(5:08CV1832)

the ALJ's written decision does not articulate those considerations.  The ALJ's findings with regard to whether Marok's impairments met or medically equaled a Listing were conclusory with little explanation.  In fact, the ALJ devoted only two sentences in his 12-page written decision to explain why Marok's impairments did not meet or medically equal a Listing.[7]  (Tr. 68.)  *See Besecker v. Astrue*, No. 3:07CV0310, 2008 WL 4000911, at *6 (S.D.Ohio Aug. 29, 2008) (*finding* that the ALJ's failure to consider the plaintiff's obesity and its combined impact on his other impairments did not constitute harmless error); *see also Reese v. Comm'r of Soc. Sec.*, No. 3:07CV057, 2008 WL 4449036, at *9 (S.D.Ohio Sept. 29, 2008) (*finding* the ALJ's failure to consider the impact of the plaintiff's obesity constituted error).

The Court finds that the ALJ erred when he did not adequately articulate in his written decision whether he considered the effects of Marok's obesity on his musculoskeletal system and other systems.  This error is not harmless, as a correction of the ALJ's error would require the Court to rewrite the ALJ's decision and federal courts generally do not rewrite ALJ's decisions *post hoc* even when it can find substantial evidence in the record to uphold the decision.

## IV.  Conclusion and Order of Remand

For the foregoing reasons, the Court finds that the ALJ's decision should be reversed and the matter remanded, pursuant to the Sentence Four of 42 U.S.C. § 405(g).  Upon remand, the

---

[7]  The ALJ's written decision states, "At the hearing, Dr. Ashok Jilhewar, medical expert, testified that the claimant's impairments did not meet or equal any listing.  I concur even though his residual functional capacity was less restrictive (He found claimant could stand and/or walk up to 6 hours per day) than my finding discussed below."  (Tr. 68.)

(5:08CV1832)

Court instructs the ALJ to conduct further administrative proceedings in a manner consistent with this opinion and Sixth Circuit law, in order to properly determine the effects of obesity on Plaintiff James E. Marok's musculoskeltal system and any other system and to articulate those findings in any resultant written opinion.  In light of the Sentence Four remand, further analysis of Marok's remaining claims is unwarranted.

The Court does not decide whether substantial evidence exists in the record upon which to award benefits.  Instead, the Court finds only that the ALJ did not conduct and articulate the proper analysis based upon the application of appropriate legal standards for his denial of benefits decision.

This matter is terminated on the docket of this Court.

IT IS SO ORDERED.


  June 3, 2010            _s/ Benita Y. Pearson_
Date                     United States Magistrate Judge

19